**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

                              **Plaintiff,**

                    **-against-**

**MEDALLION FINANCIAL CORP.,**
**ANDREW MURSTEIN, LAWRENCE MEYERS**
**AND ICHABOD'S CRANIUM, INC.,**

                              **Defendants.**

21 Civ. 11125 (LAK)

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO STRIKE CERTAIN EXHIBITS SUBMITTED BY DEFENDANTS IN**
**SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

David Stoelting
Karen Willenken
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-1100
*Attorneys for Securities*
   *and Exchange Commission*

July 7, 2022

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................II

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ...................................................................................................................2

   I.  Legal Standards Governing the Review of Documents on a Motion to Dismiss...................................................................................................................2

      A.   Unless a Complaint Relies "Heavily" on the Terms and Effect of a Document, It Is Not "Integral"........................................................................2

      B.   Documents May Only Be Considered for Limited Purposes..................................4

      C.   The Court May Strike Exhibits That Cannot Be Considered .................................4

   II.  Consideration of the Disputed Exhibits Would Be Improper on a Motion to Dismiss...................................................................................................................5

      A.   The Referenced SEC Filings Are Not Integral ....................................................5

      B.   Statements Made in the News Articles and Law Firm Alerts Are Improper Hearsay and of Disputed Relevance .........................................................9

      C.   Documents "Related to" Facts Alleged Cannot Be Considered ............................11

      D.   Testimony Transcripts Cannot Be Considered ....................................................14

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Azurdia v. City of New York*, 18-cv-04189-ARR-PK, 2019 WL 1406647
(E.D.N.Y. Mar. 28, 2019) ........................................................................... 7, 14

*Beauchine v. City of Syracuse, New York*, 21-cv-00845-BKS-TWD, 2022 WL
561548 (N.D.N.Y. Feb. 24, 2022) ...................................................................... 14

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277
(S.D.N.Y. 2013) .................................................................................................. 4

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)) ............................... 3, 7

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229 (S.D.N.Y. 2011) ........................ 3

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 n.4 (S.D.N.Y. 2008) ............... 11

*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)) ............ 3, 4, 14

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ................................................... 6, 7

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ................... 8

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423
(S.D.N.Y. 2011) .................................................................................................. 4

*In re Genworth Fin., Inc. Secs. Litig.*, 14-cv-2392-AKH, 2015 WL 1402080, at *2
(S.D.N.Y. Mar. 25, 2015) ................................................................................... 8

*In re OPUS360 Corp. Secs. Litig.*, 01-cv-2938-JGK-JCF, 2002 WL 31190157
(S.D.N.Y. Oct. 2, 2002) ...................................................................................... 4

*In re Salomon Analyst Winstar Litig.*, 02-cv-6171-GEL, 2006 WL 510526
(S.D.N.Y. Feb. 28, 2006) .................................................................................... 11

*In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y.
2011) ................................................................................................................ 10

*Jones v. Pfizer, Inc.*, 10-cv-3864-AKH, 2011 WL 13257527 (S.D.N.Y. 2011) ............... 4

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ..................................... 2, 9

*Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006) ............... 4, 11

*Powell v. Merrick Acad. Charter Sch.*, 16-cv-5315-NGG-RLM, 2018 WL
1135551 (E.D.N.Y. Feb. 28, 2018) ..................................................................... 8

*Roth v. Jennings,* 489 F.3d 499 (2d Cir. 2007) ...................................................................... 2, 4, 9

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d. Cir. 2021) ............................... 3, 9, 12

Plaintiff United States Securities and Exchange Commission ("SEC") submits this memorandum of law in support of its motion to strike certain exhibits (the "Disputed Exhibits") attached to the Declaration of Randy Mastro dated June 2, 2022 (DE 61) in support of the motion by Defendants Medallion Financial Corp. ("Medallion Financial") and Andrew Murstein (Murstein") (collectively, "Defendants") to dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

On April 26, 2022, the SEC filed its Amended Complaint against Medallion Financial, Murstein, Ichabod's Cranium, and Lawrence Meyers. DE 45. On June 2, 2022, along with their motion to dismiss the Amended Complaint, Defendants submitted the Mastro Declaration, which attached 38 exhibits. The SEC objects to the submission of 19 of these exhibits, each of which has been impermissibly offered, as made clear by the factual assertions in the Defendants' brief in support of their motion, for the truth of a matter asserted therein, and each of which was not attached or integral to the Amended Complaint. Under long-established Second Circuit law, which was recently reiterated and clarified in 2021, these 19 exhibits cannot be considered on a motion to dismiss.

The exhibits to which the SEC objects, described in more detail below, consist of SEC filings upon which the Amended Complaint does not rely (Exs. 4, 8, 12, 13, 15, 16, 22, 35); news articles or law firm "alerts" summarizing recent developments (Exs. 11, 14, 24 and 31); documents concerning various purported "valuations" of, and "offers" for, the Bank (Exs. 6, 7, 21 and 23); and excerpts from transcripts of the investigative testimony of three individuals (Exs. A-C).

---

[1] This memorandum assumes familiarity with the facts alleged in the Amended Complaint, as summarized in the SEC's contemporaneously-filed memorandum of law opposing the Defendants' motions to dismiss. References in this memorandum to ¶ are to the SEC's Amended Complaint, filed April 26, 2022 (DE 45).

By including these exhibits, the Defendants ask the Court to weigh competing narratives, based on an incomplete record, rather than to evaluate the sufficiency of the Amended Complaint. The Second Circuit's requirements, which are "strictly enforced," do not permit the Court to accept their invitation without converting their motion to one for summary judgment and giving the SEC an opportunity to respond—a process that would be premature with discovery still underway. *See* DE 33.

## ARGUMENT

### I.  Legal Standards Governing the Review of Documents on a Motion to Dismiss

Courts in this Circuit have long recognized that when deciding a motion to dismiss, a court may only look to the allegations on the face of the complaint, documents attached to or incorporated by reference in the complaint, or documents "'upon which [the complaint] *solely* relies and which [are] *integral to the complaint*.'" *See, e.g.*, *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (citations omitted). In addition, there must be no dispute about the authenticity or relevance of the document, and even documents that may be considered typically cannot be used to establish the truth of any statements made therein. *Id.* In the securities fraud context, the courts will look at SEC disclosure documents "only to determine *what* the documents stated," and "*not to prove the truth of their contents*." *Id.* (emphasis in original) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). The purpose of such a review is to determine whether the document contained the misrepresentation alleged by the plaintiff, or whether it disclosed facts alleged to have been omitted. *Roth*, 489 F.3d at 509.

#### A.  Unless a Complaint Relies "Heavily" on the Terms and Effect of a Document, It Is Not "Integral"

The Second Circuit recently applied and clarified this standard when it reversed a district court's decision granting a motion to dismiss based in part on improperly considered documents

offered by the defense. The Second Circuit wrote that "a document may be considered 'integral' to the complaint in a narrow set of circumstances, where the plaintiff *relies heavily on the document's terms and effect* in pleading his claims." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d. Cir. 2021) (emphasis added) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)) (*cert. denied*, 2022 WL 1295727). This requirement "deters trial courts from engaging in factfinding when ruling on a motion to dismiss" without giving the plaintiff an opportunity to submit its own evidence to controvert the evidence relied upon by the defense. *AECOM*, 19 F.4th at 106-07 (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

Defendants may argue that the proffered exhibits must be considered because they contradict the SEC's claims. *AECOM* made clear, however, that such an argument must fail. In that case, the defense argued that an audit report by the Defense Contract Audit Agency was "integral to the 'plaintiff's ability to pursue his cause of action,'" because it undercut the plaintiff's materiality argument. *AECOM*, 19 F.4th at 107. The Second Circuit found that the district court had erred in considering the report, observing:

> If all that is required to render a document integral to the complaint is that it be favorable to the defendant, possibly thwarting the plaintiff's claims, it would be difficult to imagine a document that could not be considered on a motion to dismiss pursuant to the integral-to-the-complaint exception.

*Id.* at 108. The court held that only the documents actually quoted in the complaint should have been considered. *Id.*; *see also Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 245-46 (S.D.N.Y. 2011) (declining to consider document signed by and in the possession of plaintiff, despite the fact that it contained "liability waivers and representations regarding risk and reliance" that the defendant argued "bar[red] some of Plaintiffs' claims," because it was not relied upon in the complaint).

**B.    Documents May Only Be Considered for Limited Purposes**

Even documents that may be "considered" on a motion to dismiss typically cannot be considered for the truth of the matters stated therein. *See, e.g., Glob. Network Commc'ns,* 458 F.3d at 156 (finding reversible error where district court considered the testimony of plaintiff's president in a prior criminal case for its truth); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 228 n.1 (S.D.N.Y. 2006) (considering news articles "for the fact of their publication" and documents filed in another court "to establish the fact of such litigation and related filings"). Even SEC filings, despite being clearly authentic, can be considered "only to determine what the documents stated." *Roth*, 489 F.3d at 509; *see also In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 582 (S.D.N.Y. 2011) ("[T]he Court takes judicial notice of the fact that these documents contain certain information, but it does not accept these documents for the truth of the matters asserted in them.").

**C.    The Court May Strike Exhibits That Cannot Be Considered**

Given that a motion to dismiss is "not the time to decide the merits," the Court may grant a motion to strike in order to "exercise [its] discretion to confine [its] review only to the pleadings and the briefs in support of and in opposition to the motion." *Jones v. Pfizer, Inc.*, 10-cv-3864-AKH, 2011 WL 13257527, at *1 (S.D.N.Y. 2011) (striking exhibits offered by both parties). *See also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 286-89 (S.D.N.Y. 2013) (granting motion to strike news articles and SEC filings attached as exhibits to declaration in support of motion to dismiss); *In re OPUS360 Corp. Secs. Litig.*, 01-cv-2938-JGK-JCF, 2002 WL 31190157, at *1 n.3 (S.D.N.Y. Oct. 2, 2002) (granting motion to strike news articles attached as exhibits to defendants' affidavit).

4

II.    **Consideration of the Disputed Exhibits Would Be Improper on a Motion to Dismiss**

    A.    **The Referenced SEC Filings Are Not Integral[2]**

Defendants invite the Court to consider no less than eight SEC filings, none of which are mentioned in the Amended Complaint, to establish the truth of facts stated therein. Exhibits 13, 15 and 16 are SEC filings made by Medallion Financial before or after the time period in which the Amended Complaint alleges the fraud occurred. Exhibits 4, 8 and 12 are MFC earnings press releases filed on Form 8-K. And Exhibit 35 is a Form 8-K press release filed by Whole Foods Market, an entity with no relevance to this litigation, in 2008.[3]

The seven MFC filings are offered to support a variety of factual assertion in the MFC Defendants' motion to dismiss brief:

- That MFC "just reported record results" for its 2021 fiscal year (2021 Form 10-K, Ex. 4; MFC Br. at 1);

- That before the alleged fraud started, 80% of Medallion Financial's earnings were coming from "outside of the medallion lending area" (2014 Earnings Press Release filed on Form 8-K, Ex. 8, MFC Br. at 4, 7);

- That MFC has had "distinguished board members" (2010 [Earnings] Press Release filed on Form 8-K, Ex. 12, MFC Br. at 7 n.7);

- That MFC "began diversifying its portfolio beyond taxi medallion loans" in 1987. (1998 Form 10-K, Ex. 13, MFC Br. at 7);

---

[2]    The SEC does not object to Exhibits 5, 10, or 19, each of which are SEC filings of Medallion Financial the inaccuracy of which are fundamental to the Amended Complaint's allegations. It also does not object to Exhibit 33, a proxy statement filed by MFC with the SEC, despite the fact that it was not integral to the Amended Complaint, because unlike statements about the valuation of assets or MFC's "earnings," the fact for which it is cited—that Murstein's compensation decreased during the fraud—is at least arguably an appropriate subject of judicial notice.

[3]    The Defendants cite to Exhibit 35 for the proposition that, in an investigation of Whole Foods, the SEC "apparently agreed" with the alleged arguments by CEO John Mackey that his "more than 1,400" pseudonymous posts touting Whole Foods and disparaging its competitors "could not possibly have been material." MFC. Br. at 33 n.23. Neither this filing nor any of the facts purportedly reflected in it were even mentioned in the Amended Complaint, and the views of SEC staff in 2008 on conduct that may or may not have been similar to the conduct alleged in the Amended Complaint, is irrelevant.

- That by the end of 2021, taxi medallion loans "comprised less than 1% of Medallion's loan portfolio" (2021 Form 10-K, Ex. 15, MFC Br. at 7);

- That in 1996, the loans had comprised 76% of Medallion's loan portfolio at the time of its IPO (1996 Form 10-K, Ex. 16, MFC Br. at 7); and

- That Murstein was concerned about undervaluing the Bank "at the same time" Medallion "had recently extended the terms of its share repurchase program" (2016 8-K, Ex. 22, MFC Br. at 9).

Of these SEC filings, only one was even mentioned in the Amended Complaint. That document, the 1996 Form 10-K, was cited for the background fact that at that time, MFC's "principal focus" had been "the origination and servicing of loans financing the purchase of taxi medallions and related assets." ¶ 25. "Limited quotation [from a document] does not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). Accordingly, because the Amended Complaint does not rely "heavily on the document's terms and effect" to establish its claims, *see* Section I.A above, even the one press release from which the Amended Complaint quoted for a background fact should not be considered, on a motion to dismiss, to establish the truth of the facts stated therein.

Defendants seek to use the proffered exhibits to suggest that the conduct alleged in the Amended Complaint was immaterial, and that the Defendants lacked scienter. For example, the "80% of earnings" statistic[4] appears intended to suggest that because Medallion Financial had been so successful in diversifying its portfolio, the short sellers' warnings about its prospects were misleading. The goal appears to be to argue that by 2014, Medallion Financial was expected to "weather the industry-wide impact from rideshare apps," MFC Br. at 7, so the decline in the value of the collateral would have a negligible impact. *See* MFC Br. at 4, 7. If

---

[4] The "80% of earnings" point also appears—without a citation to any source—in the motion to dismiss brief filed by Defendants Larry Meyers and Ichabod's Cranium.  Dkt. 60 at 4 ("But by 2014, due to the success of previous diversification efforts, approximately 80% of Medallion's earnings were derived from non-Medallion lending.").

considered by the Court and accepted as true, this fact could offer alternative, and more favorable to the defense, inferences about scienter and materiality than the ones alleged in the Amended Complaint. These "facts" also appear designed to support a narrative that Medallion Financial's valuation specialist, RP Financial, was wrong when it refused to increase the value of Medallion Bank, in substantial part because of concerns about its medallion-backed loan portfolio. The citation to Exhibit 22 for the fact of Medallion Financial's repurchase program, along with the unsupported statement about Murstein's concern that undervaluing Medallion Bank while the program was going on, appear to be offered as an innocent explanation for Murstein's alleged efforts to influence the valuation of Medallion Bank.

In any case, for the Court to consider these purported facts, which are not included in the Amended Complaint or in any document integral to it, at this stage would require it to weigh the evidence rather than test the sufficiency of the SEC's allegations. *See Goldman*, 754 F.2d at 1067 (citation omitted) ("The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."); *DiFolco*, 622 F.3d at 113 (citation omitted) (reversing where the district court "'assay[ed] the weight of the evidence' of repudiation and improperly chose between reasonably competing interpretations," including by considering a document not integral to the complaint).

The Defendants are free to make these factual arguments—on summary judgment and at trial—with a fully developed record. By offering them now, however, they "ignor[e] the well-established limitations that exist on a motion to dismiss." *Azurdia v. City of New York*, 18-cv-04189-ARR-PK, 2019 WL 1406647, at *4 (E.D.N.Y. Mar. 28, 2019). In doing so, the defendants seek to muddy the inquiry before the Court in order to present *factual* challenges that are not yet ripe for decision. *See Powell v. Merrick Acad. Charter Sch.*, 16-cv-5315-NGG-RLM, 2018 WL

1135551, at *4 (E.D.N.Y. Feb. 28, 2018) (emphasis added) (citation omitted) ("To the extent that [Defendant] seeks to use these extrinsic materials to rebut the allegations in the Complaint, it may not do so on a motion to dismiss. . . ."); *In re Genworth Fin., Inc. Secs. Litig.*, 14-cv-2392-AKH, 2015 WL 1402080, at *2 (S.D.N.Y. Mar. 25, 2015) ("I am not able to distinguish in Defendants' motion their arguments based on deficiencies of the pleadings, from their arguments based on inadequate merits, in light of the documents presented by Defendants.") (dismissing complaint *sua sponte* and denying motion to strike as moot).

Even if these documents were somehow deemed "integral" to the Amended Complaint, considering them as proposed by the Defendants would be inappropriate because many of them are being cited for factual propositions whose accuracy the SEC disputes. Most significantly, the MFC Brief cites Exhibit 8 for the proposition that before the alleged fraud started, 80% of Medallion Financial's earnings were coming from "outside of the medallion lending area." MFC Br. at 4. Exhibit 8 is a Medallion Financial earnings release, filed on Form 8-K, that quotes Defendant Murstein on this point. The SEC disputes the accuracy of this statement. The press release does not define "earnings" or "medallion lending area," and no reconciliation to any reported GAAP metric is offered, so it would be highly inappropriate to take judicial notice of this "fact." *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) (approving district court's refusal to take judicial notice from fact, set forth in SEC filing, about number of defendant's employees).

The Defendants quote the *Kramer* decision for the principle that "a district court may consider" all SEC filings. MFC Br. at 2 n.1. The holding in *Kramer*, however, was more limited: the Second Circuit held that the "public disclosure documents filed with the SEC" that could be considered were "the very documents that are *alleged to contain the various misrepresentations*

*or omissions* and are relevant *not to prove the truth of their contents* but only to determine what the documents stated." *Kramer*, 937 F.2d at 774 (2d Cir. 1991) (emphasis added).[5] SEC filings, although indisputably authentic, still can only be considered for appropriate non-hearsay purposes. *See AECOM*, 19 F.4th at 108 ("In securities fraud cases, we have . . . found it appropriate to consider documents filed with the [SEC] when they form the basis for the allegations in the complaint."); *see also Roth,* 489 F.3d at 509 ("When a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed.").

Nothing in these cases suggests that a court may venture beyond the disclosure documents that the SEC alleges were inadequate, drawing facts from periodic reports of the defendant company in years before and after the alleged fraud, from Forms 8-K from the relevant period that were not cited in the Amended Complaint as misleading, and from SEC filings by companies not involved in the instant litigation. Accordingly, Exhibits 4, 8, 12, 13, 15, 16, 22 and 35 should be stricken.

### B.    Statements Made in the News Articles and Law Firm Alerts Are Improper Hearsay and of Disputed Relevance

Exhibits 11, 14, and 24 are news articles, and Exhibit 31 is a law firm "alert" summarizing the *CFPB v. CashCall* decision. These documents are not mentioned in the Amended Complaint at all.[6] They are cited for the following factual assertions:

---

[5]    Here, the SEC does not object to this Court's consideration of any of the filings that the Amended Complaint alleges contained misrepresentations, for the purpose of determining what was disclosed to investors. These exhibits include the 2016 and 2017 filings attached to the Mastro Declaration as Exhibits 5, 10, 19 and 29.

[6]    By contrast, Exhibits 26 and 27, examples of Lawrence Meyers' articles, and Exhibit 34, an article written by the Contractor, are alleged in the Amended Complaint as the basis for its touting allegations, along with numerous other articles. The SEC accordingly does not object to consideration of those articles.

- That Defendant Murstein's grandfather immigrated from Poland in 1934, purchased a medallion and drove a taxi; that when his grandfather wanted to sell additional medallions he had acquired, "no banks would provide financing." (2008 news article, Ex. 11, MFC Br. at 6.)

- That financial technology companies "needed access to an established financial institution with a bank charter to originate even most basic consumer loans." (Sept. 2017 news article, Ex. 14, MFC Br. at 7.)

- That "[a]fter the 2016 election, market values of financial companies, like the Bank, increased substantially in anticipation of deregulation and tax cuts." (Nov. 2016 news article, Ex. 24, MFC Br. at 10.)

- That the "court ruling involving a marketplace lender," discussed in Medallion Financial's third quarter 2016 Form 10-Q in a way that the Amended Complaint alleges was misleading, "had a significant impact on the FinTech industry, … because it portended that FinTech companies would have to partner with banks and ILCs, like Medallion Bank, in order to originate the loans and financial products those FinTech companies were able to source." (Compilation of law firm alerts from September through November 2016, Ex. 31, MFC Br. at 20.)

These exhibits are cited for their truth, in support of the purported accuracy of the statement in Medallion Financial's third quarter 2016 Form 10-Q that a "court ruling involving a marketplace lender" explained Medallion Financial's decision to assign a higher valuation to Medallion Bank. ¶ 119. The Amended Complaint alleges that Medallion Financial did not "conduct a meaningful inquiry concerning the likely impact of the court ruling, or its relevance to the interest of marketplace lenders in acquiring Utah industrial banks, before including this statement in the Third Quarter 2016 10-Q." ¶ 186.

The Defendants make no attempt to show that the news articles and law firm alerts they cite were known to them at the time of the filing, so the exhibits are irrelevant. In any case, they cannot be considered for the truth of any statements made therein.

The Mastro Declaration claims that the Court may consider "any 'news articles' relevant to the complaint." Mastro Dec. at ¶ 2 (citing *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y. 2011)). But reliance on this authority is misplaced given the

purpose for which the Defendants are offering the articles. The court in *Smith Barney* considered whether certain news articles had put the plaintiffs on notice, triggering the running of the statute of limitations; it did not consider the articles for the truth of any statements made therein. 765 F. Supp. 2d at 400-01. And its decision cited an earlier one in which the court had written that it "should be emphasized, of course, that the Court does not accept the [newspaper] articles as evidence of the truth of the matters therein asserted." *Id.* at 397 (citing *In re Salomon Analyst Winstar Litig.*, 02-cv-6171-GEL, 2006 WL 510526, at *4 n.6 (S.D.N.Y. Feb. 28, 2006)). These decisions are consistent with numerous other decisions in which courts have considered news articles for the fact of their publication, but not for their truth. *See, e.g.*, *Lapin*, 506 F. Supp. 2d at 229 (considering news articles "for the fact of their publication"); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 n.4 (S.D.N.Y. 2008) (taking judicial notice of newspaper articles for the fact of their publication).

Exhibits 11, 14, 24 and 31 should therefore be stricken.

**C.     Documents "Related to" Facts Alleged Cannot Be Considered**

Exhibits 6, 7, 21 and 23 consist of various documents, none of which was publicly filed. Although some of them were mentioned or quoted from in the Amended Complaint, none were integral to it—the SEC did not rely "heavily on the terms and effect" of these documents to establish its fraud claims. *See* Section I.A above. In some cases, the Amended Complaint referenced a fact to which these documents relate, but it did not mention the document itself. Defendants offer these documents in order to provide competing facts and/or inferences, rather than to demonstrate that the facts alleged in the Amended Complaint conflict with the terms of the relevant documents.

Exhibits 6 and 7 are excerpts of documents purportedly reflecting "valuations" of Medallion Bank by third parties. Although facts to which Exhibits 6 and 7 relate are mentioned

in the Amended Complaint (*see* ¶¶ 145, 175), consideration of these related documents is inappropriate because, as the Second Circuit made clear in *AECOM*, documents that are merely "related to" facts or documents relied on by the complaint are not appropriate for consideration on a motion to dismiss. *AECOM*, 19 F.4th at 109. For the Court to consider documents that are simply "related to," rather than "integral to," the Amended Complaint's allegations would require it to determine "the authenticity and status of these documents," which requires a more complete evidentiary record. *Id.* Doing so would be particularly inappropriate for Exhibit 6, which is a two-page excerpt of a longer, draft contract that was never executed.

Exhibits 6 and 7 are similar to the audit report discussed in *AECOM*, which the Second Circuit found was not "integral" because although the amended complaint alleged that "AECOM was subject to periodic audits," that did not render integral "every document relating to" the audit process. *Id.* at 108. The amended complaint in *AECOM* also cited to a work order, which the court held could be considered because the complaint "explicitly reference[d] and *quote[d] from it to support* [plaintiff's] property allegations." *Id.* (emphasis added). The court held that it was error, however, for the district court to consider additional documents that were related to, and arguably modified, that work order. *Id.* at 108-09. Similarly, here, the alleged facts are that certain third parties either provided, or were asked to agree to, certain numbers in a variety of contexts and based on varying degrees of analysis and expertise. The Amended Complaint does not cite to any particular document(s) in support of most of these factual assertions. For the Court to consider Exhibits 6 or 7 would require it to find that they were the best and only evidence relevant to the assertions in the Amended Complaint, and because the documents are not integral to the Amended Complaint, such an analysis of the documents is unnecessary.[7]

---

[7]      For similar reasons, Exhibit 32 is not integral to the Amended Complaint. But because the fact for which it is cited—that "[a]ll banks explicitly waived any potential default or event of default triggered by the

Exhibit 21 is an excerpt from a presentation by KBW ("Investment Bank B") that is quoted from in the Amended Complaint (¶ 141), but the document is not integral because the SEC's claims do not rely heavily on its terms. In addition, the two-page excerpt is misleading, because it excludes the portions of the presentation from which the Amended Complaint quoted. The excerpt is offered to show that KBW, when asked to provide a valuation, "promptly provided Medallion with analyses of the estimated value of the Bank using common valuation methodologies," and that KBW "estimated the value of the Bank at ranges substantially above RP Financial's estimates." MFC Br. at 8-9. The claim that KBW used "common valuation methodologies" is established by neither the Amended Complaint nor the excerpt of its presentation offered as Exhibit 21.

The purpose of Exhibit 21 appears to be to establish that the low end of the range KBW provided was higher than the top of RP Financial's range, as illustrated in Exhibit 23, which is described as a "chart showing all Q3 2016 valuations . . . all contained in the SEC's investigative file."[8] MFC Br. at 10. It reflects information cherry-picked from the Amended Complaint and from the documents excerpted at Exhibits 6, 7 and 21. Because those exhibits should not be considered, consideration of the summary chart that relies on them would be inappropriate. In addition, Exhibit 23 is misleading because it characterizes each of the indications of value as a "valuation" or "offer," while the Amended Complaint makes clear that they should not be

---

Metropolitan Bank default before the valuation filings in question," is acknowledged in the Amended Complaint (¶ 128), the SEC does not object to consideration of this exhibit.

    [8]        To the extent that Defendants mean to suggest that any document in the SEC's possession may be considered on a motion to dismiss, they are incorrect. The Second Circuit has unequivocally rejected such a standard. In *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), the court "reiterate[d]" that a "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original) (citation omitted).

viewed as reliable indications of value, nor as serious offers to purchase any meaningful portion of Medallion Bank.

Defendants do not explain why they provided Exhibit 23, but their implicit purpose appears to be to argue that all of the "valuations" reflected in Exhibit 23 were accurate reflections of fair value and that, accordingly, Murstein was justified in terminating RP Financial rather than acceding to its lower valuation. This argument improperly invites the Court to draw competing inferences from the facts set forth in the Amended Complaint and these documents, rather than accepting the allegations in the Amended Complaint as true.

Accordingly, Exhibits 6, 7, 21 and 23, and all factual allegations based on them, should be stricken.

### D.     Testimony Transcripts Cannot Be Considered

The MFC Brief, in a footnote, cites to Exhibits A, B and C for the proposition that Medallion Financial's auditors, and a representative of Investment Bank C, stood by their decisions. MFC Br. at 10 n. 11. While the footnote states that the motion "is not predicated on any testimony given during the SEC's investigation," at page 39 the Defendants cite the testimony exhibits again, arguing that because "the auditors still stand by their opinions," they could not have been materially misled by Murstein's representations to them.

The case law is clear that testimony transcripts cannot be considered on a motion to dismiss. *See, e.g., Glob. Network Commc'ns, Inc.*, 458 F.3d at 156 (finding reversible error where district court considered the testimony of plaintiff's president in a prior criminal case for its truth); *Beauchine v. City of Syracuse, New York*, 21-cv-00845-BKS/TWD, 2022 WL 561548, at *6 (N.D.N.Y. Feb. 24, 2022) (declining to consider transcript of proceeding that preceded filing of action); *Azurdia*, 2019 WL 1406647, at *4 (same). The Defendants offer no authority to the contrary; in fact, their statement that the motion "is not predicated on any testimony" is a

tacit admission that the testimony cannot be considered on a motion to dismiss. MFC Br. at 10

n. 11. Accordingly, Exhibits A through C should be stricken.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant its motion to

strike the Disputed Exhibits.


 Dated: July 7, 2022
          New York, New York

                                        Respectfully submitted,


                                        David Stoelting
                                        Karen Willenken

                                        ATTORNEYS FOR PLAINTIFF
                                        Securities and Exchange Commission
                                        100 Pearl Street, Suite 20-100
                                        New York, NY 10004-2616