UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

    v.

MEDALLION FINANCIAL CORP.,
ANDREW MURSTEIN, LAWRENCE
MEYERS, and ICHABOD'S CRANIUM,
INC.,

               Defendants.

-------------------------------------------------------x

Case No. 1:21-cv-11125 (LAK)

### DEFENDANTS MEDALLION FINANCIAL AND ANDREW MURSTEIN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

Page:

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    A.   The SEC Fails To Adequately Plead Violations Of Sections 10(b) And 17(a)
        Relating To Medallion's Reported Bank Valuations (Counts 1 & 2) ........................ 4

        1.   The SEC Fails To Plead Any Misstatement Of Fact. ................................... 4

            a.   The Valuation Opinions Are Non-Actionable. ............................. 4

            b.   Medallion Fully Complied With GAAP. ..................................... 8

            c.   The Chicago Medallion Valuations Are Non-Actionable. .......................... 9

            d.   Other Statements At Issue Were Accurate And None Of The *Omnicare*
                Exceptions Apply. .................................................................. 10

        2.   The Valuation Statements Are Immaterial. ................................................ 12

        3.   The SEC Fails To Adequately Allege Valuation-Related Scienter. ................. 13

        4.   The SEC's Belated Claim Of "Scheme Liability" Fails. ................................. 16

        5.   The SEC Fails To Satisfy Section 17(a)'s Independent Requirements. ............. 17

    B.   The SEC Fails To Adequately Plead Violations Of Sections 10(b), 17(a), And 17(b)
        Relating To Alleged Touting (Counts 1, 2 & 4) ...................................................... 18

        1.   The Touting-Related Allegations Fail For Numerous Reasons. ....................... 18

        2.   The SEC Fails To Adequately Allege Touting-Related Materiality. ................. 20

        3.   The SEC Fails To Adequately Allege Touting-Related Scienter. ..................... 21

    C.   The SEC Fails to Adequately Plead Aiding And Abetting Touting (Count 4) ......... 22

    D.   The SEC Fails To Adequately Plead Violations Relating To Reporting, Books And
        Records, Internal Controls, Or Misleading The Auditor (Counts 5-7) ..................... 23

    E.   The Requested Disgorgement And Officer/Director Bar Relief Should Be Stricken 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re AlphaStar Ins. Grp. Ltd.*,
   383 B.R. 231 (Bankr. S.D.N.Y. 2008) .......................................................................14

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .........................................1, 4, 5, 9, 11, 12, 15, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................................................16

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..........................................................................3

*Baum v. Harman Int'l Indus.*,
   575 F. Supp. 3d 289 (D. Conn. 2021) .......................................................................14

*In re Bausch & Lomb, Inc. Sec. Litig.*,
   592 F. Supp. 2d 323 (W.D.N.Y. 2008) .......................................................................16

*Bd. of Tr. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011) .......................................................................13

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
   2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021) ..................................................................9

*Chill v. General Electric Co.*,
   101 F.3d 263 (2d Cir. 1996) ........................................................................14, 15, 23

*City of Westland Police and Fire Ret. Sys. v. Metlife, Inc. et al.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015) ....................................................................1, 5, 6

*Cortese v. Skanska Koch, Inc.*,
   2021 WL 429971 (S.D.N.Y. Feb. 8, 2021) ................................................................12, 16

*In re CytRx Corp. Sec. Litig.*,
   2015 WL 5031232, ; *12 (C.D. Cal. July 13, 2015) ............................................................20

*Dobina v Weatherford Intern. Ltd.*,
   909 F. Supp. 2d 228 (S.D.N.Y. 2012) .......................................................................14

*Frederick v. Mechel OAO*,
   475 F. App'x 353 (2d Cir. 2012). ..........................................................................13

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
   843 F.3d 1257 (11th Cir. 2016) ...........................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 F. App'x 664 (2d Cir. 2016) ..................................................................19

*Hou Liu v. Intercept Pharm., Inc.*,
    2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ..........................................14

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ....................................................................13

*Howard v. SEC*,
    376 F.3d 1136 (D.C. Cir. 2004) ..................................................................22

*Janus Cap. Grp. v. First Derivative Traders*,
    564 U.S. 135, 131 S. Ct. 2296 (2011) ..................................................18, 19

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
    2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) ..........................................9, 10

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012) ..................................................13, 14

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ........................................................................25

*Liu v. SEC*,
    --- U.S. ---, 140 S. Ct. 1936 (2020) ............................................................25

*In re Loewen Group, Inc.*,
    2004 WL 1853137 (E.D. Pa. Aug. 18, 2004) ............................................13

*Lorenzo v. SEC*,
    --- U.S. ---, 139 S. Ct. 1094 (2019) ............................................................19

*In re Lynn Tilton*,
    SEC Release No. 1182, 2017 WL 4297256 (Sept. 27, 2017)....................12

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014)............................................................9

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ......................................18, 19

*Noto v. 22nd Century Grp. Inc.*,
    35 F.4th 95 (2d Cir. 2022). ..............................................2, 3, 18, 19, 20, 21

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175, 135 S. Ct. 1318 (2015)..............................................1, 5, 6, 7, 10

## TABLE OF AUTHORITIES

**Page(s)**

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021). ...............................................................15, 16

*PR Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th Cir. 2004) ...........................................................................13

*In re Puda Coal Sec. Litig.*,
   30 F. Supp. 3d 261 (S.D.N.Y. 2014)................................................................19

*In re PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009)..............................................................14

*Rabkin v. Lion Biotechnologies, Inc.*,
   2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ...................................................20

*Reilly v. U.S. Physical Therapy, Inc.*,
   2018 WL 3559089 (S.D.N.Y. July 23, 2018) ..................................................13

*In re Reserve Fund Sec. Litig.*,
   732 F. Supp. 2d 310 (S.D.N.Y. 2010)..............................................................14

*SEC v. Bankatlantic Bancorp, Inc.*,
   2013 WL 12009694 (S.D. Fla. Nov. 14, 2013)..................................................8

*SEC v. Berry*,
   2008 WL 4065865 (N.D. Cal. Aug. 27, 2008) ................................................25

*SEC v. Caserta*,
   75 F. Supp. 2d 79 (E.D.N.Y. 1999) .................................................................16

*SEC v. Cole*,
   2015 WL 5737275 (S.D.N.Y. Sept. 19, 2015).................................................17

*SEC v. Contrarian Press, Inc.*,
   2019 WL 1172268 (S.D.N.Y. Mar. 13, 2019) .................................................20

*SEC v. Musella*,
   748 F. Supp. 1028 (S.D.N.Y. 1989)................................................................22

*SEC v. Obus*,
   693 F.3d 276 (2d Cir. 2012)........................................................................21, 22

*SEC v. Patel*,
   61 F.3d 137 (2d Cir. 1995)...............................................................................25

*SEC v. Paulsen*,
   2020 WL 1911208 (S.D.N.Y. Apr. 18, 2020)..................................................23

# TABLE OF AUTHORITIES

**Page(s)**

*SEC v. Rio Tinto plc*
    2019 WL 1244933 (S.D.N.Y. March 18, 2019). ....................................................................24

*SEC v. Rio Tinto plc*
    41 F.4th 47 (2d Cir. 2022), ...........................................................2, 16, 17, 19, 20

*SEC v. Sequential Brands Grp., Inc.*,
    2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021)). ....................................................7, 15

*SEC v. Smith,*
    2008 WL 11336814 (C.D. Cal. Feb. 28, 2008).....................................................................8

*SEC v. Stanard,*
    2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ......................................................................25

*SEC v. StratoComm Corp.,*
    2 F. Supp. 3d 240 (N.D.N.Y. 2014)....................................................................................19

*SEC v. Syron,*
    934 F. Supp. 2d 609 (S.D.N.Y. 2013)................................................................................17

*SEC v. Warner*,
    652 F. Supp. 647 (S.D. Fla. 1987) .....................................................................................17

*SEC v. Yang,*
    999 F. Supp. 2d 1007 (N.D. Ill. 2013) ...............................................................................22

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    417 F. Supp. 3d 379 (S.D.N.Y. 2019).................................................................................6

*Tagliaferri v. U.S.,*
    2018 WL 3752371 (S.D.N.Y. Aug. 8, 2018).......................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007)................................................................................13

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    2003 WL 252138 (N.D. Cal. Jan 24, 2003) .......................................................................13

*United States v. Erickson,*
    601 F.2d 296 (7th Cir. 1979) .............................................................................................15

*United States v. Evangelista,*
    122 F.3d 112 (2d Cir. 1997)...............................................................................................16

*Va. Bankshares Inc. v. Sandberg*,
    501 U.S. 1083, 111 S. Ct. 2749 (1991)..............................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998).......................................................................................12

**STATUTES**

15 U.S.C. § 77q(b) ....................................................................................................19

## INTRODUCTION

The SEC spent five years investigating Medallion Financial and its President, has pleaded and repleaded its case against them, and, since filing it, has seen the Second Circuit render rulings fatal to its fraud claims.  So it comes as no surprise, then, that the SEC is now left unable to defend its collapsing case.

*First*, the SEC concedes that "the statements about the Bank's valuation," on which the SEC's valuation fraud claim is based, "involved judgment calls and were, therefore, statements of opinion," not statements of fact, under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 135 S. Ct. 1318 (2015), and its progeny, *In re AmTrust Financial Services, Inc. Securities Litigation*, 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) (Kaplan, J.).  *See* Opp. 31.  While the SEC casts this concession as "unremarkable," *id.*, it, in fact, is so deeply damaging to the SEC's valuation-related claims that they are now dead on arrival.  To try to salvage them, the SEC is reduced to arguing for the first time that *Omnicare*'s narrow exceptions apply to the valuation opinion itself, rather than to other statements in Medallion's public filings that the SEC now realizes cannot sustain a valuation fraud claim.  But its newfound argument fares no better.  As this Court has held, the *Omnicare* exceptions are "substantially more difficult for a securities plaintiff to allege adequately" than "a statement of pure fact."  *City of Westland Police and Fire Ret. Sys. v. Metlife, Inc. et al*., 129 F. Supp. 3d 48, 68-69 (S.D.N.Y. 2015) (Kaplan, J.) (granting motion to dismiss, in part, due to failure to plead *Omnicare* exceptions).  And here, the SEC asks the Court to go mining for "inference[s]" in support of the exceptions.  Opp. 31-32.  The exceptions do not apply to the valuation statements.  Nor do they apply to any of the other statements the SEC previously put at issue, which are accurate, non-actionable, and did not form "the basis for" the valuation opinion in any event.  *Omnicare*, 575 U.S. at 194, 135 S. Ct. at 1332.

*Second*, the SEC cannot escape two recent Second Circuit rulings fatal to its touting fraud claim.  It largely ignores the Second Circuit's recent dispositive ruling in *Noto v. 22nd Century Group, Inc.*, which found touting allegations against a company and its executives insufficient because defendants "had no duty to disclose" that "they were paying authors to promote the Company's stock," even where—unlike here—"it was 'clear,'" in that case, that the CEO defendant "knew" that the *authors of the articles* were required to "disclos[e] that the Company had paid for them" and—like here—the CEO exercised "some input," but not "ultimate authority," over the content posted.  35 F.4th 95, 100, 103-04 (2d Cir. 2022).  Medallion cited *Noto* more than half a dozen times in its opening brief ("Br.") (at 3, 27-30, 32, 35), yet the SEC relegates its entire discussion of this controlling case to a single paragraph that ignores its import.  Opp. 49.  Similarly, in the face of the Second Circuit's recent decision in *SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022), holding that "misstatements and omissions alone are not enough for scheme liability," the SEC is reduced to arguing that entirely common and legal acts, like hiring Meyers or the Contractor, constitute the necessary "something extra" supporting a fraudulent "scheme."  *Id.* at 54.  But the SEC cannot "shoehorn" such "allegations into a claim for scheme liability."  *Id.* at 52.

The SEC's scienter allegations—an essential element of fraud—are similarly inadequate.  In its prior opposition brief, the SEC relied on two purported "motives" for fraud:  to avoid loan defaults and to protect Murstein's reputation and financial stake.  ECF 68 at 33.  Neither motive was mentioned in the SEC's original complaint, but after receiving Medallion's first motion to dismiss, the SEC amended its pleading by adding multiple paragraphs purporting to address these two "motives."  *Compare* ECF 1, *with* ECF 46.  The SEC, now realizing from Medallion's second motion to dismiss that both alleged "motives" are squarely foreclosed by caselaw, has shifted its theory to conscious misbehavior or recklessness.  For the first time, it focuses on Murstein's

purported "reject[ion]" of certain auditor advice.  Opp. 28.  But it is undisputed that the same auditor approved the filed valuation and concluded that a restatement was not necessary. The SEC cannot have it both ways.  It cannot contrive an alleged accounting fraud claim from an auditor's mere "recommend[ation]" to use a particular valuation firm, ¶ 165, but then ignore the actual accounting determinations of that same auditor that contradict the SEC's theory.

The SEC's opposition also cannot justify its failure to adequately plead materiality, another essential element of any fraud claim, as to either valuation or touting.  In its prior opposition, the SEC ignored Medallion's argument—and all of the caselaw supporting it—that its alleged valuation-related conduct (as to its Bank, loan portfolio and modest Chicago medallions) was immaterial because of its extensive disclosures in public filings.  Br. 22-23.  Now, the SEC claims for the first time that a reasonable investor would not be able to parse these extensive disclosures. But the "balance sheets of Medallion Bank" are attached to the publicly filed auditor's approval of the valuation, 2016 10-K at F-56, and these disclosures regarding the assets and liabilities of the Bank are exactly the information investors would need to evaluate Medallion's valuation of the Bank or reach its own conclusion as to the Bank's value.  Moreover, its entire loan portfolio, including the value attributed to each loan, was included in its contemporaneous public filings. And regarding touting, the SEC ignores that *Noto* found the non-disclosure of compensation "not to be" material, even though the defendant's "stock price more than tripled" after the articles' publication.  35 F.4th at 100, 107.  Here, the argument against materiality of this alleged touting is even clearer because the SEC admits in its pleading, ¶ 5, that the stock price *declined* during the relevant period, which "underscores that no reasonable investor would have considered such information material."  *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 578 (S.D.N.Y. 2013).  And because the SEC's remaining claims are all premised upon its purported

valuation and touting claims, they too must be dismissed.

That this case never should have been brought and requires dismissal is now more apparent than ever. Indeed, the Second Circuit keeps rejecting the very theories the SEC raises here, and the plaintiffs' securities bar has chosen to sit this one out, given the ancient alleged conduct at issue (which ended long ago), the absence of any corrective disclosure (which was unnecessary), and the lack of any material effect on Medallion's stock price (which *decreased* during the relevant period). Unable to address the legal merits, the SEC is reduced to smearing Murstein with unseemly *ad hominem* attacks that ignore the following: Murstein relied on independent auditors and professionals who approved the valuations at issue; he is not alleged to have directed the non-disclosure of the bloggers' compensation, or even to have known they should have disclosed it, nor did he; he is not alleged to have sold any stock or profited in any way from any of this alleged activity, nor did he; and he otherwise has an unblemished, decades-long record of success as an executive who diversified Medallion to the ultimate benefit of both the Company and shareholders today. Yet the SEC somehow seeks a debarment here. Such agency overreach must end here and now. The Court should dismiss this meritless case in its entirety. And since the SEC has now had multiple attempts to plead its case, its amended pleading should be dismissed with prejudice.

## ARGUMENT

**A. The SEC Fails To Adequately Plead Violations Of Sections 10(b) And 17(a) Relating To Medallion's Reported Bank Valuations (Counts 1 & 2)**

### 1. The SEC Fails To Plead Any Misstatement Of Fact.

#### a. The Valuation Opinions Are Non-Actionable.

The SEC explicitly concedes "that the statements about the Bank's valuation involved judgment calls and were, therefore, statements of opinion." Opp. 31. This Court in *AmTrust* held that if—as is conceded here—the "relevant accounting guidance called for the exercise of

judgment, then the resulting data [here, valuations] would be a statement of opinion," and dismissed the vast majority of the allegedly misleading statements on that basis. *AmTrust*, 2019 WL 4257110, at *14.  Counts 1 and 2 should therefore be dismissed.

The SEC mentions *AmTrust* in a single footnote, asserting only that an opinion statement is not always "non-actionable."  Opp. 31 n.5.  Of course exceptions exist, but they do not apply here.  The SEC now inexplicably asserts for the first time—in its second bite at the opposition brief apple—that the *Omnicare* exceptions apply to the valuation itself.  Opp. 31-33.  This argument fails as a matter of law.  As this Court has repeatedly acknowledged, "it is substantially more difficult for a securities plaintiff to allege adequately (or, ultimately, to prove) that [statements of opinion or belief are] false than it is to allege adequately (or prove) that a statement of pure fact is false."  *City of Westland Police*, 129 F. Supp. 3d at 68-69; *see also AmTrust*, 2019 WL 4257110, at *28 ("many, if not all, of these statements of opinion cannot give rise to a securities violation").  The Amended Complaint falls far short of this high bar.  It fails to adequately plead any *Omnicare* exception as to the valuation.

First, the SEC argues that "the AC adequately alleges the first *Omnicare* prong" because "[t]he most plausible inference from the AC's allegations is that Murstein did *not* believe" in the valuations' accuracy.  Opp. 31-32.  By referring only to an "inference," the SEC concedes that the Amended Complaint does *not* allege that Murstein disbelieved the valuations.  Instead, the only facts in the Amended Complaint that relate at all to Murstein's subjective belief regarding the Bank's fair value support Murstein's genuine conviction:  "I personally think [the Bank is] worth a lot more," ¶ 142; "I believe [the Bank] is worth substantially more," ¶ 170.  The Amended Complaint does not allege these statements are false.  Moreover, the SEC ignores the case cited in Medallion's opening brief, Br. 21, that makes clear that the Amended Complaint "do[es] not come

close to the facts in other cases where courts have found that a defendant affirmatively disbelieved (or recklessly credited) a statement of opinion," for example, where "Officer Defendants understood that the publicly reported numbers were at odds with [their] internal analyses, and [they] believed that the internal analyses more accurately reflected the actual financial condition of the company." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 396 (S.D.N.Y. 2019) (citation omitted) (dismissing claims for failure to adequately plead *Omnicare* exceptions).

As to the second *Omnicare* exception, the SEC claims that "the AC alleges misleading 'embedded facts' that make Medallion Financial's ultimate opinion statement about the Bank's valuation misleading."  Opp. 32.  But while the "facts" the SEC identifies may relate tangentially to valuation issues, the valuation would not change based on them.  In other words, they are not "embedded" in the valuation itself.  Moreover, as demonstrated *infra* at 10-11,  each of these facts is accurate, per the facts pleaded in the Amended Complaint and those cognizable on this motion.

Finally, the SEC contends that the third *Omnicare* exception is met because the valuations omitted material facts.  Opp. 32-33.  Pleading the third exception is "no small task," because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts"—that is, "[a] reasonable investor does not expect that every fact known to an issuer supports its opinion statement." *Omnicare*, 575 U.S. at 189–90, 194, 135 S. Ct. at 1329, 1332; *see also City of Westland Police*, 129 F. Supp. 3d at 68-69.  The first allegedly omitted fact is that "Murstein knew his conduct was not consistent with GAAP's requirement of consistency in fair value measurement because the Auditor told him so."  Opp. 32.  But the SEC acknowledges that the auditor merely "recommend[ed]" that Medallion utilize the same valuation firm; it did not require Medallion to do so.  ¶ 165.  Notably *absent* is any allegation that the auditor did not know Medallion had changed valuation firms; that the auditor expressed concern after Medallion

6

actually engaged with and received reports from other valuation firms; or that the auditor expressed concern after Medallion reported the Bank valuation in its public filings.  Nor does GAAP "require" consistency in fair value measurement.  GAAP expressly permits—and in some cases encourages—deviation in situations like this. *See infra* at 8-9, Br. 15-17.  Indeed, the auditor told Murstein:  "we are tied to the prior valuation methodology in the absence of compelling new information *that we would be required to consider*."  ¶ 163 (emphasis added).  Taken together, the auditor recommended consistency as a general matter, but once the new valuation was conducted and reported, there is no allegation that the auditor expressed concern.  Thus, this situation is one of "competing facts," where a reasonable investor does not expect the opinion to be supported by every fact. *Omnicare*, 575 U.S. at 189-90, 194, 135 S. Ct. at 1329, 1332.[1]

The last allegedly omitted fact is the conclusory allegation of a *quid pro quo* agreement with Berenson for future investment work in exchange for a higher valuation.  Opp. 33.  This bare allegation is not sufficient.  "To be specific:  The investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.  That is no small task for an investor." *Omnicare*, 575 U.S. at 194, 135 S. Ct. at 1332.  The SEC points to a single, immaterial fact—that Medallion engaged Berenson for investment banking work as well as valuation work, Opp. 33—which was at best tangentially related to the valuation itself.  This ordinary, innocent conduct is not something

---

[1] This scenario is entirely unlike *SEC v. Sequential Brands Grp., Inc.*, cited by the SEC (Opp. 32), where the auditor's findings on goodwill impairments, controls, and books and records outside of the pleadings were not cognizable.  *See* 2021 WL 4482215, at *8 (S.D.N.Y. Sept. 30, 2021)).  Here, the lack of a restatement is undisputed by the SEC and judicially noticeable.  And Medallion's decision to use a different valuation firm employing different assumptions to the same valuation methodologies was entirely consistent with GAAP, and the auditor never required otherwise. And the Amended Complaint does not allege that Murstein directed or requested that different assumptions be used.

a reasonable person would expect to be disclosed and does not go to "the basis for the [] opinion."[2]

### b. Medallion Fully Complied With GAAP.

The SEC derides Medallion's multi-page discussion of how its valuations complied with GAAP as "conclusory." *Compare* Opp. 25, *with* Br. 15–18.  It is the SEC's response to this detailed, well-cited analysis that is conclusory; the SEC merely notes that GAAP requires that valuation techniques "be applied consistently" and concludes that the valuations "were higher than what a reasonable, unbiased specialist would have concluded." Opp. 24, 26; ¶ 271.  But the SEC ignores that ASC 820, the only provision at issue here, provides for situations—like here—where deviation from the default is not only permissible, but preferred.  Br. 16; *see also* ASC 820-10-55-90 to 92 (providing examples in which observable prices for a transaction might not be relevant because of low market activity); FAS 157-3 (October 2008) ("[I]n cases where the volume and level of trading activity in the asset have declined significantly, the available prices vary significantly over time or among market participants, or the prices are not current, the observable inputs might not be relevant and could require significant adjustment.").  The SEC also ignores Medallion's detailed explanation of the nuances of ASC 820, including the testimony of the author of FAS 157 (ASC 820's pre-cursor) instructing that "there is no mathematical formula to determine fair value," and "a certain amount of artistry is involved in the process."  Br. 15-17; *SEC v. Bankatlantic Bancorp, Inc.*, 2013 WL 12009694, at *6 n.13 (S.D. Fla. Nov. 14, 2013).  And the SEC fails to grapple with the inconsistency between admitting that the valuations "involved judgment calls and were, therefore, statements of opinion," Opp. 31, and arguing that the exercise of those accounting judgments violated GAAP.

---

[2] The SEC cites an unpublished, out-of-circuit case where the evidence at issue was much more robust than the SEC's scant and conclusory allegations here.  *See SEC v. Smith*, 2008 WL 11336814, at *3-4 (C.D. Cal. Feb. 28, 2008) (defendant transacted with company he touted for exorbitant prices, and admitted that he and third-party shared a tacit understanding).

Ultimately, the SEC seeks to bootstrap a GAAP violation from the fact that different valuation firms used different methodologies.  Opp. 24-27.[3]  This "lack of consistency" argument fails to acknowledge the principle in *AmTrust* that there can be a *range* of reasonable fair valuations; it also fails to explain how Medallion purportedly knew or recklessly disregarded that any of the valuations or valuation methodologies were outside of the range of reasonableness.

### c.    The Chicago Medallion Valuations Are Non-Actionable.

The SEC concedes that the Chicago medallion valuations were opinion statements, but it argues that Medallion's statements about their valuation were "misleading" because Medallion allegedly ignored certain transactions in the market.  Opp. 35–36.  This gets it backwards:  the Chicago medallion valuations are opinions *because* of the market's volatility.  *See* ASC 820-10-55-90 to 92 (providing examples of situations in which observable prices for a transaction might not be relevant because of low market activity).  Indeed, based on this market volatility, the Chicago medallions were classified as a Level 3 asset pursuant to ASC 820.  Q3 2016 10-Q at 30-33, 68.  The SEC focuses on a single statement:  "[t]ransfer prices of Chicago medallions" were "N/A" as of September 30, 2016.  Opp. 36; ¶ 203.  The SEC again conflates the opinion statement—the valuation—with a true statement that gives rise to the need for a judgement-based approach:  that transfer prices were not applicable given market volatility.[4]

---

[3] The SEC claims that compliance with GAAP is a factual determination inappropriate to resolve on a motion to dismiss.  Opp. 25.  But courts, including this Court in *AmTrust*, have granted motions to dismiss on the grounds that a GAAP violation was not adequately pleaded.  *See* 2019 WL 4257110, at \*24; *see also* Br. 16 n.10.  The SEC cites *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*, 2021 WL 3727095, at \*6 (S.D.N.Y. Aug. 23, 2021) (Opp. 25), to argue that approval from auditors "at most show[s] that a material issue of fact exists."  But in that case, the court listed three separate pieces of "countervailing evidence" regarding goodwill impairments and questionable accounting practices.  *Id.*  No such countervailing evidence is alleged here.

[4] Even if Medallion valued Chicago medallions at the price that the SEC claims was appropriate, the valuation would have only constituted a 1.5% reduction in assets, which "undercuts an inference of fraud."  Br. 18 n.11 (quoting *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 286, 295 (S.D.N.Y. 2014)).  Though the SEC tries to cast *In re Magnum* as somehow limited to "earnings net loss[es] of less than five percent," Opp. 36, courts in this district do not take such a narrow approach.  *See, e.g.*, *In re Kandi Techs. Grp., Inc. Sec. Litig.*, 2019 WL 4918649, at \*8

### d. Other Statements At Issue Were Accurate And None Of The *Omnicare* Exceptions Apply.

The SEC simultaneously argues that three other "valuation-related statements were misleading facts—not opinions," and that the *Omnicare* exceptions apply to them. Opp. 29-30. This is illogical, as the *Omnicare* exceptions only apply to opinion statements. In any event, each statement was accurate.

The first statement at issue is whether Medallion received "expressions of interest in the Bank." Opp. 30. Once again, the SEC's theory shifts: dropping its argument that there was only a single expression of interest based on a "one-line email," ECF 68 at 24-25, the SEC now claims "[t]he statement . . . was misleading because they were not true expressions of interest—Murstein had manufactured those expressions of interest, and he had been informed by RP Financial and the Auditor that they were inadequate to justify increasing the Bank's valuation." Opp. 30. To be clear, the Amended Complaint cites multiple expressions of interest with valuation ranges far above RP Financial's. *See* ¶ 141 (email from Sandler O'Neill stating "'it is reasonable to assume a valuation range of $185MM-$325MM' and that $300 million was 'a reasonable proxy for a control sale price,'" and email from Keefe, Bruyette & Woods "with a 'potential valuation analysis' listing a range of valuations of the Bank up to $371 million"). To the extent the SEC argues more information was required, Medallion was only required to disclose "facts [that] conflict with what a reasonable investor would take from the statement itself." *Omnicare*, 575 U.S. at 189, 135 S. Ct. at 1329. Here, not only is it accurate that Medallion received "expressions of interest," but, contrary to the SEC's contention, a reasonable investor reading that phrase— made up of open-ended terms conveying possibility, not firm commitment—would not assume

---

(S.D.N.Y. Oct. 4, 2019) (restatement with "no impact on [] corporate income severely undercuts an inference of fraud") (citing *In re Magnum*)).

there were firm offers or that underlying due diligence had been completed.  Moreover, the SEC continues to harp on the argument that the auditor "informed" Medallion before the valuation was performed that a single document alone did not warrant a valuation increase.  Opp. 30; *see* ¶ 149. But, critically, there is no allegation of auditor concerns after the valuation was performed or after the valuation was publicly filed.

The second statement at issue is the reference to a court ruling that "the Company *believes* heightens the interest of marketplace lenders to acquire or merge with Utah industrial banks." ¶ 180(b) (emphasis added); Opp. 30.  This statement "contain[s] frequent trappings of opinion statements—qualifiers such as 'I believe,'" making it "easy" to find non-actionable.  *AmTrust*, 2019 WL 4257110, at *12.  Ignoring this, the SEC argues that the statement is misleading because Medallion allegedly "did not conduct a meaningful inquiry concerning the likely impact of the court ruling."  Opp. 30 (quoting ¶ 186).  The SEC provides no support for this bare allegation.  In any event, it is implausible on its face given that Medallion had months between the publication of the decision and filing its 10-Q to analyze the impact of the decision.

The third statement at issue is that Medallion "engaged a valuation specialist to assist the Board of Directors in its determination of Medallion Bank's fair value."  Opp. 30; ¶ 181.  The SEC argues that the statement is "misleading because [Medallion] actually used a series of valuation specialists, one of which was fired because it would not support the company's desired valuations." Opp. 30*.*  But Medallion did engage a valuation specialist to assist the board, and the mere fact that Medallion "used a series of valuation specialists" over time does not render the statement misleading.  And if Medallion "fired" RP Financial and retained another valuation firm who was better equipped to provide a valuation opinion, that also would not make it misleading to say that Medallion had engaged a valuation specialist to assist the Board in its fair value determination.

11

2.      **The Valuation Statements Are Immaterial.**

The SEC's prior opposition brief wholly ignored Medallion's arguments on materiality. But now that Medallion has called the SEC out for conceding immateriality, it scrambles to manufacture a materiality argument.   It asserts that "materiality determinations are rarely appropriate on a motion to dismiss," Opp. 33, while ignoring that this Court in *AmTrust* granted a motion to dismiss on similar facts in part for failure to adequately plead materiality, 2019 WL 4257110, at *34.  The SEC chastises Medallion for not "directly quoting from the periodic reports" that provided detailed valuation-related disclosures to investors, Opp. 33, but ignores that Medallion attached over 100 pages of excerpts of public filings, highlighting the relevant disclosures.  While the SEC claims (without legal or factual support) that no one would be able to read these disclosures and evaluate the Bank valuation, it dodges that the "balance sheets of Medallion Bank" are attached to the auditor's approval of valuation, 2016 10-K at F-56, and these disclosures regarding the assets and liabilities of the Bank are exactly the information an investor would need to determine whether that investor agrees with the Company's fair value figure, or reach its own conclusion as to the value of the Bank.  Such robust disclosures render any potential misstatement immaterial.  *Va. Bankshares Inc. v. Sandberg*, 501 U.S. 1083, 1097, 111 S. Ct. 2749, 2760 (1991); *In re Lynn Tilton*, SEC Release No. 1182, 2017 WL 4297256, at *49 (Sept. 27, 2017).  Moreover, absent from the SEC's argument is any citation to ASC 820 or any case law to support its claim about what additional information should have (or could have) been disclosed.[5]

---

[5] Now in its second opposition brief, the SEC adds a new argument—that Medallion's description of the process of valuing the medallion-backed loan portfolio was a misleading statement of fact.  Opp. 35.  The Amended Complaint, however, does not allege any misstatement regarding this process.  This "argument fails for the simple reason that it was not pleaded and a party cannot amend its complaint through a brief."  *Cortese v. Skanska Koch, Inc.*, 2021 WL 429971, at *10 n.4 (S.D.N.Y. Feb. 8, 2021) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). In any event, Medallion complied with GAAP in determining the fair value of performing medallion loans.  It considered available observable and unobservable inputs, used judgment to assess the relevance and weight of such inputs, and made a reasonable judgment that performing loans should be fair valued at par, absent indicia of impairment.  2016 10-K at F-31, F-9, 49.  For each loan, the schedule disclosed key terms, including the name of the

3.      **The SEC Fails To Adequately Allege Valuation-Related Scienter.**

In response to the arguments that the SEC failed to allege valuation-related scienter, Br.

23-26, the SEC backs away from the only purported motives that it previously argued: "avoiding

defaults on loan covenants and protecting [Murstein's] reputation and personal financial stake."

ECF 68 at 33.  This change in position is understandable given that it is foreclosed by caselaw.

Medallion cited multiple directly-on-point cases within this district holding that "alleged

motivation to maintain compliance with the covenants in the Company's credit agreements is

plainly inadequate to support an allegation of intent to commit fraud."  Br. 24 (quoting *Reilly v.*

*U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *15 (S.D.N.Y. July 23, 2018)); *see also, e.g.*,

*Bd. of Tr. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853,

867 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).

The SEC does not attempt to distinguish *Reilly* or *Mechel*.  Nor does it cite a single case within the

Second Circuit to counter the proposition that the desire to comply with loan covenants is an

insufficient basis to allege scienter as a matter of law.[6]  As for the second purported motive—

financial gain and reputational harm—Medallion similarly cited multiple cases within this district

establishing that such assertions are "too generalized to allege the proper 'concrete and personal'

benefit required" to allege scienter.  *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d

---

borrower, the acquisition date, the maturity date, the interest rate, the principal outstanding, the cost, whether the loan is on non-accrual status, or past due on contractual payments and therefore considered non-income producing, and the fair value of the loan.  2016 10-K at Ex. 99-1.

[6] Instead, the SEC cites several out-of-circuit private securities cases, all of which predate the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007), requiring a more rigorous pleading of scienter, and in any event are either helpful to Defendants or distinguishable.  *See* Opp. 29 (citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) ("standing alone," allegations concerning loan defaults "do not establish a strong inference" of scienter); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) ("possible motive . . . not to violate loan covenants" was sufficient only when "combined with the red flags of [the company's] financial condition"); *In re Loewen Group, Inc.*, 2004 WL 1853137, at *21 (E.D. Pa. Aug. 18, 2004) (holding that alleging motive "based on the need for financing and to comply with debt covenants" is insufficient); *In re U.S. Aggregates, Inc. Sec. Litig.*, 2003 WL 252138, *2 (N.D. Cal. Jan 24, 2003) (the concern of "defaulting on loans" was one of many alleged motives)).

168, 184 (S.D.N.Y. 2012) (quoting *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 531-32 (S.D.N.Y. 2009)).   Because "[e]very businessperson is concerned about his reputation," the "motive to protect a business reputation is, therefore, too general to satisfy the pleading requirement for scienter." *In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 259 (Bankr. S.D.N.Y. 2008).  The cases cited by the SEC, Opp. 29, are distinguishable.  In *Baum v. Harman International Industries*, 575 F. Supp. 3d 289, 296 (D. Conn. 2021), the complaint alleged the defendant had "more than $50 million" to "personal[ly]" gain through competing compensation packages.  Here, there is no allegation that Murstein's compensation is tied to Medallion's performance, nor that Murstein sold any Medallion stock.  Opp. 29.  And scienter was adequately alleged in *In re Reserve Fund Securities Litigation*, 732 F. Supp. 2d 310 (S.D.N.Y. 2010), not simply because the defendants had a major stake in the flagship fund, but because, unlike here, the defendants also received significant management fees from that fund.  *Id.* at 320.  The SEC, accordingly, fails to allege that Defendants benefitted from the fraud in "some concrete and personal way."  *Dobina v Weatherford Intern. Ltd.*, 909 F. Supp. 2d 228, 240 (S.D.N.Y. 2012) (Kaplan, J.) (citation omitted).

Clearly recognizing that it cannot demonstrate a particularized motive or opportunity, the SEC shifts course yet again and focuses for the first time on alleged "compelling evidence of conscious misbehavior," or "at least recklessness."  Opp. 27.  "Given the significant burden on the plaintiff in stating a fraud claim based on recklessness," *Chill v. General Electric Co.*, 101 F.3d 263, 270 (2d Cir. 1996), the SEC's allegations of conscious behavior or recklessness "must be correspondingly greater," *Hou Liu v. Intercept Pharmaceuticals, Inc.*, 2020 WL 1489831, at *14 (S.D.N.Y. Mar. 26, 2020) (Kaplan, J.).   Thus, in the absence of motive and opportunity, "[a]llegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  *Chill*, 101 F.3d at 270.

In its brief, the SEC argues for conscious misbehavior or recklessness based on a premise that Murstein "rejected the Auditor's advice not to fire RP Financial."  Opp. 28.  But the SEC's premise is not supported by any allegation in the Amended Complaint, which merely alleges that the auditor told Murstein to use "consistent methods" quarter to quarter.  ¶ 165.  The auditor also told Murstein that it would be "required to consider" any "new information" that might warrant changing the methodology used.   ¶ 163.  The SEC seems to assume that a change in valuation *firms* shows knowledge or reckless disregard of a GAAP violation based on lack of consistency in assumptions applied to valuation *methodology*.  If Medallion's valuations violated GAAP based on inconsistent assumptions or methodologies or were otherwise outside of the range of reasonableness, the independent auditor would have refused to approve them.  Here, the auditor that signed off on Medallion's financial statements (and that the SEC has not charged with any wrongdoing) was contemporaneously aware of (a) changes in valuation firms, (b) changes in resulting valuations, and (c) any changes in assumptions applied to valuation methodology.  *See supra* at 6-7.  No wonder the SEC fails to address *Ortiz v. Canopy Growth Corp.*, Br. 25, a recent case relying heavily on *AmTrust* in dismissing securities fraud claims for lack of scienter because, as here, "an independent auditor evaluated [defendant's] financial statements and approved of them" which, "in itself, weighs heavily against scienter." 537 F. Supp. 3d 621, 678 (D.N.J. 2021).[7]

The absence of any restatement is also probative on this motion without the need for a reliance-on-professionals affirmative defense because it is the SEC's burden to plead facts giving rise to a "'strong inference' of fraudulent intent."  Opp. 26.  The SEC incorrectly suggests that

---

[7] The SEC's remaining cases are inapposite.  Opp. 26-28.  The SEC relies on *Sequential Brands* to argue that reliance on an auditor is not cognizable on a motion to dismiss.  2021 WL 4482215, at *8.  But there, the approval from auditors was insufficient to warrant dismissal of *accounting violations*, which do not require scienter as an element.  *Sequential Brands*, unlike *Ortiz*, did not speak to how an independent auditor's approval provides an inference against scienter at the motion to dismiss stage. In *United States v. Erickson*, 601 F.2d 296, 305 (7th Cir. 1979), a criminal case requiring a greater level of scienter than conscious misbehavior or recklessness, "defendants did not consult [the auditor] until after the overtrades were executed," whereas here, the auditor was involved the entire time.

Medallion is relying on an "affirmative defense" of reasonable reliance on "advice from the company's auditor." Opp. 3, 28 (citing *SEC v. Caserta*, 75 F. Supp. 2d 79, 94-95 (E.D.N.Y. 1999) and *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). But the fact that the independent auditor has never required a restatement is not an "affirmative defense"; it goes to the plausibility of the scienter allegations that the SEC itself has the burden to plead. *See In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (finding it "noteworthy" for scienter analysis that defendant's auditors "did not question [the company's] accounting practices"); *Ortiz*, 537 F. Supp. 3d at 678 (finding "it is difficult to conclude that plaintiffs behaved recklessly in omitting to inform investors facts when trained financial professionals investigating the company did not conclude that such a disclosure was necessary"). The SEC has failed to adequately plead that Medallion acted with the requisite scienter for securities fraud.

### 4.   The SEC's Belated Claim Of "Scheme Liability" Fails.

After two complaints and three dismissal motions, the SEC now argues for the first time—though critically, fails to allege—scheme liability in connection with its valuation claim. The SEC has only alleged *misstatements* regarding the valuation itself and related statements, while assertions of scheme liability were reserved solely for the touting claim. This new theory should be rejected for two independent reasons. First, the Amended Complaint's "threadbare recital" of the elements of scheme liability is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009). It is devoid of any allegations regarding, for example, how this "scheme" is different from or broader than the specific alleged misstatements. And as noted, a plaintiff cannot supplement its complaint in an opposition to a motion to dismiss with a new theory that is not supported by the complaint's allegations. *See Cortese*, 2021 WL 429971, at *10 n.4. Second, even putting aside the pleading deficiencies, the scheme liability argument fails under *Rio Tinto* (which the SEC fails to address in its new valuation-scheme argument) because misstatements and

omissions alone are insufficient for scheme liability. 41 F.4th at 52.  And of course, scheme liability cannot be premised on nonactionable valuation opinion statements.

5.      **The SEC Fails To Satisfy Section 17(a)'s Independent Requirements.**

The SEC does not dispute that, to state a claim under Section 17(a)(2), it must allege that Defendants "obtain[ed] money or property *by means of*" the alleged wrongdoing.  Br. 26 (quoting *SEC v. Syron*, 934 F. Supp. 2d 609, 637 (S.D.N.Y. 2013) (emphasis added)).  No money or property was obtained "by means of" either the valuation-related or touting alleged wrongdoing.  Br. 26, 34.  While the SEC argues that Murstein did not need to receive a "'fraud bonus' or additional compensation for participating in the fraudulent conduct," Opp. 39, it ignores the prepositional phrase "*by means of*" the alleged wrongdoing.  And its allegations do not meet this requirement.  The case it cites, *SEC v. Cole*, 2015 WL 5737275, at *7 (S.D.N.Y. Sept. 19, 2015), makes precisely that point:  "[T]he Court in *Syron* dismissed the SEC's Section 17(a)(2) claim because 'the Complaint simply lacks *any* allegation that [defendants'] compensation was affected, *in any way*, by the stock offerings." *Id.* (quoting *Syron*, 934 F. Supp. at 638 (emphases in *Cole*)).  The SEC does not allege, for example, that Medallion's stock price increased based on the alleged misstatements, or that Murstein received additional compensation because of the alleged misstatements.  In fact, his compensation substantially *decreased* during this time period.  ¶ 20.

Section 17(a) also requires that any alleged misconduct be "in the offer or sale of any securities."  The SEC does not dispute that under the standard in *SEC v. Warner*, 652 F. Supp. 647, 650 (S.D. Fla. 1987), its allegations are insufficient.  The Court should adopt that standard as it more properly gives effect to the statutory "in the offer or sale" language.  Br. 27, 34.

**B.     The SEC Fails To Adequately Plead Violations Of Sections 10(b), 17(a), And 17(b) Relating To Alleged Touting (Counts 1, 2 & 4)**

**1.     The Touting-Related Allegations Fail For Numerous Reasons.**

Defendants' moving brief demonstrated that Defendants had no duty to disclose author payments, they are not alleged to have made any misstatements relating to compensation, and scheme liability is foreclosed as a matter of law.  Br. 28-32.  The SEC's responses are unavailing.

Because "[o]nly an article's maker, not its benefactor, has a duty to disclose that it was paid for," the SEC's touting claim against Defendants fails.  *Noto*, 35 F.4th at 103.  Here, the only people alleged to have sent or published misstatements are Meyers and the Contractors—not Medallion or Murstein.  Thus, as in *Noto*, Defendants cannot be held liable for an alleged "scheme in which they paid authors to write promotional articles about the company."  35 F.4th at 99.  In claiming that Murstein's "oversight" and "contractual right to approve" transformed him into the "maker" of alleged compensation-misstatements, Opp. 45, the SEC ignores the myriad cases expressly rejecting nearly identical arguments.  *See* Br. 29.  The SEC also ignores *Noto* in its "maker" argument, Opp. 45-46*,* which held that *Janus* "[makes] clear that neither the [defendant] Company nor the individual defendants qualify as maker," notwithstanding plaintiff's allegations that "defendants provided content for, edited, reviewed and/or approved [promotional] articles." 35 F.4th at 103 (citing *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296 (2011)); *see also In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) ("[A]llegations that the defendants worked in conjunction with stock promoters to promote [defendant's] stock" failed to establish maker status); *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *28 n.29 (S.D.N.Y. Mar. 30, 2021).

The two cases the SEC cites for maker liability—both of which predate recent Second Circuit decisions narrowing such liability—do not save its touting claim.[8]  In *In re Puda Coal Securities Litigation*, central to the court's holding was that "attribution . . . is strong evidence that a statement was made by—and only by—the party to whom it is attributed."  30 F. Supp. 3d 261, 267 (S.D.N.Y. 2014) (quoting *Janus*, 564 U.S. at 142-43, 131 S. Ct. at 2302).  Because the statements "prominently displayed both underwriters' names" and were thus "attributable to the underwriters," the underwriters were clearly the "makers" of those statements.  *Id.*  But here, the SEC's allegations make clear that the purported misstatements were attributed solely to the promoters, not to Murstein or Medallion.  *See, e.g.*, ¶¶ 53, 54, 64.  *SEC v. StratoComm Corp.*, 2 F. Supp. 3d 240 (N.D.N.Y. 2014), is similarly distinguishable.  There, the defendant CEO personally "drafted" and "disseminated" each release.  *Id.* at 258.[9]  Here, by contrast, there are no such allegations regarding Medallion or Murstein.  Neither is the "maker" of any alleged misstatement.

The SEC's attempt to salvage its "scheme liability" claim also fails.  In response to *Rio Tinto*, which held that "misstatements and omissions alone are not enough for scheme liability," 41 F.4th at 54, the SEC is now forced to rely exclusively on "some other form of fraud," *Lorenzo*, 139 S. Ct. at 1103.  The SEC points to the "hiring" and "paying" of the authors, Opp. 48, but this conduct is legal; the only alleged misconduct here is the author's failure to disclose compensation. ¶¶ 64, 99.  Likewise, there is nothing illegal about posting anonymously.  *See, e.g.*, 15 U.S.C. § 77q(b).  The SEC also points to the "sheer number of articles and comments" (the vast majority

---

[8] *See, e.g.*, *Noto*, 35 F.4th at 103; *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) ("[A]llegations that [a statement] was drafted with the approval and input of some [ ] Defendants is not sufficient to demonstrate the control essential to maker liability."); *see also Menora Mivtachim*, 2021 WL 1199035, at *28 n.29 ("The allegation that [defendant] approved, reviewed, ratified, [and] furnished information and language for inclusion in certain statements is insufficient to make [defendant] the 'maker' [of those statements].").

[9] Similarly, in *Lorenzo v. SEC*, the Supreme Court found the defendant liable for "the dissemination of false or misleading information" precisely because Lorenzo was the one responsible for "sending emails" directly to prospective investors that "he understood to contain material untruths."  --- U.S. ---, 139 S. Ct. 1094, 1101 (2019).

of which are flippant comments that do not even mention Medallion, Br. 31-32), containing purported misstatements and omissions. Opp. 47. But there is no numerical cap on *Rio Tinto*'s holding that misstatements and omissions alone are insufficient. The SEC's final attempt to allege "something extra," *Rio Tinto*, 41 F.4th at 54, is that Murstein "control[led] what [the authors] responded to and how," Opp. 48. But again, this concerns an alleged misstatement or omission. The SEC's effort to "shoehorn its allegations into a claim for scheme liability," *Rio Tinto*, 41 F.4th at 52, fails.[10] Indeed, *Noto* rejected the assertion that an alleged "illegal stock promotion scheme" could ground liability under Rule 10b-5(a) & (c). 35 F.4th at 99, 106-07; Br. 30.[11]

### 2. The SEC Fails To Adequately Allege Touting-Related Materiality.

The SEC cites a lone district court case for the sweeping proposition that compensation for writing articles is *always* material, Opp. 46—and that case relies on an unpublished, nearly twenty-year old district court case from Florida. But the SEC again ignores *Noto*, where the Second

---

[10] The cases cited by the SEC are inapposite. For example, in *SEC v. Contrarian Press, Inc.*, 2019 WL 1172268, at *2 (S.D.N.Y. Mar. 13, 2019), the defendant hired a separate PR firm that he also owned and operated through which he himself wrote and published pseudonymous newsletters containing falsified interviews to promote his company's stock. And the defendant did not merely pay others to promote his company using pseudonyms, but concocted an elaborate scheme "to create a front company" for the "sole purpose" of creating the appearance that a third entity was promoting his company's stock (and through which he paid the authors). *Id.* at *2, 6. The court held it was *those* "manipulative and deceptive acts that are prohibited by Rule 10b-5(a) and (c)." *Id.* at *6; *see also Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *1-2 (N.D. Cal. Feb. 15, 2018) (defendant separately founded and operated a stock promotion company through which he ran stock promotion schemes for various companies); *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *2; *12 (C.D. Cal. July 13, 2015) (finding scheme liability where the company's edits were passed to the author through a third party "in an effort to conceal the Insider Defendants' direct involvement").

[11] The SEC's attempts to distinguish *Noto* on this point are meritless. The SEC claims that "Murstein requested that his touters conceal their relationship with Medallion Financial." Opp. 49. Yet the SEC does not cite any paragraph in its Amended Complaint for support. In any event, the Second Circuit held in *Noto* that the defendants were not liable even though they, unlike Murstein, allegedly "knew that paying third parties to write promotional articles without disclosing that the Company had paid for them was inappropriate." 35 F.4th at 100. The SEC cites the *Noto* defendants' "indifference" as to whether the authors disclosed compensation as a notable distinction. Opp. 49. However, the Court in *Noto* first found that the failure to disclose compensation did not equate to market manipulation, and cited this "indifference" to note that "even *if*" it was, defendants had not engaged in any manipulative act. 35 F. 4th at 107. The SEC then tries to distinguish *Noto* by distinguishing between the types of information contained in the *Noto* articles, i.e., "analysis and information derived from public filings, press releases, and statements by management." Opp. 49. But *Noto* does not suggest that the articles were "limited to" those sources, *id.*, nor does it suggest that the sources were dispositive in the Court's analysis.

Circuit came to the exact opposite conclusion, finding the non-disclosure of compensation "not to be" material.  35 F.4th at 107.  Based on the context of the articles and comments at issue here, Br. 32-33, no "reasonable investor would attach importance to [the alleged misstatement] when making a decision," *Noto*, 35 F.4th at 105.  The SEC highlights the anonymity of the posts, but the anonymous nature of these posts only reduces their influence in the market or on reasonable investors.  The SEC does not even allege that any of the posts impacted the price of Medallion's stock.  Indeed, Medallion's stock declined during this period.  *See* ¶ 5; *cf. Noto*, 35 F.4th at 100 (no materiality even where "stock price more than tripled").  And while the SEC claims that materiality determinations are rarely appropriate at the motion to dismiss stage, Opp. 47, this Court in *Amtrust* granted the motion to dismiss in part because plaintiffs failed to adequately plead materiality.  2019 WL 4257110, at *12.  The same is true here.[12]

### 3.    The SEC Fails To Adequately Allege Touting-Related Scienter.

The SEC points to certain paragraphs in the Amended Complaint that it claims support touting-related scienter, but it fails to explain their relevance.  Opp. 42.  Copying and pasting a conclusory allegation that "Murstein knew or recklessly disregarded" Meyers' alleged misstatement, Opp. 42, does not demonstrate scienter; indeed, *Noto* dismissed similar claims even where it was "clear" that the defendant "knew that paying third parties to write promotional articles without disclosing [compensation] was inappropriate."  35 F.4th at 100.  The SEC's focus on Murstein's alleged conduct in November 2016 (*after* the purported touting), Opp. 42-43, also ignores Defendants' cases, Br. 33, that make clear the scienter requirement concerns only the defendant's state of mind "at the moment of" his alleged misconduct.  *SEC v. Obus*, 693 F.3d 276,

---

[12] The touting-related Section 17(a) claim should also be dismissed for additional reasons, which (following the SEC) are addressed in combination with the valuation-related Section 17(a) arguments.  *See supra* at 17.

286 (2d Cir. 2012).[13]  The SEC misconstrues Defendants' argument:  the point is that Murstein was not aware that any of the alleged conduct was improper until November 2016, and therefore did not possess the requisite scienter at the time of alleged misconduct—and nothing the SEC points to suggests otherwise.  Br. 33.

Finally, the SEC repeatedly states that Murstein committed fraud by "hiring third parties to tout Medallion Financial's stock without disclosing their compensation."  Opp. 21, 39.  The suggestion that these third-parties were hired on the condition that they not disclose their compensation is speculation—unsupported by the Amended Complaint and belied by the SEC's concession that Medallion's General Counsel reviewed and negotiated their contracts, which required the third-parties to "comply with all applicable laws and regulations . . . , including but not limited to," the federal securities laws.  *Id.* at 8.  The integral involvement of Medallion's General Counsel in the hiring process further negates Murstein's purported fraudulent intent because such involvement is "evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004); *see also Tagliaferri v. U.S.*, 2018 WL 3752371, at *3 (S.D.N.Y. Aug. 8, 2018) (finding attorney involvement relevant to a defendant's "state of mind, thus bearing on whether he acted with fraudulent intent").

## C.    The SEC Fails to Adequately Plead Aiding And Abetting Touting (Count 4)

The SEC's aiding and abetting touting claim fails because there is no viable primary claim; in any event, the SEC has failed to allege that Medallion or Murstein were aware of or substantially assisted any such violation.  Br. 34-35.  To rehabilitate its aiding and abetting claim, the SEC says

---

[13] To support its "scienter-after-the-fact" argument, the SEC cites two inapposite insider trading cases.  Not only does *SEC v. Musella*, 748 F. Supp. 1028, 1040 (S.D.N.Y. 1989), predate *Obus* by more than twenty years, but the defendant there made a false statement to an *SEC investigator*—not a newspaper reporter, as the SEC alleges here.  *Id.* at 1040.  And in *SEC v. Yang*, 999 F. Supp. 2d 1007, 1013-14 (N.D. Ill. 2013), which the SEC wrongly cites as an SDNY case, the defendant did not comment to a reporter; he attempted to destroy and conceal evidence.

Murstein had "extensive oversight" and a "contractual right to approve" the posts.  Opp. 45.  But these examples underscore "Murstein's participation in only legal aspects of touting," which "cannot give rise to liability."  Br. 35.  Because the SEC cannot point to a single allegation showing that Murstein "consciously assisted the commission of the *specific* [violation]"—here, failure to disclose compensation—in an "active way," the aiding and abetting claim fails.  *SEC v. Paulsen*, 2020 WL 1911208, at \*5 (S.D.N.Y. Apr. 18, 2020) (emphasis added).  At most, the SEC alleges Murstein should have caught the compensation non-disclosure based on the right to review and receipt of links or alerts to some articles.  Opp. 42.  But recklessness is not pleaded just because "defendants should have been more alert and more skeptical."  *Chill*, 101 F.3d at 270 (citation omitted).  How much more so when the standard is conscious assistance of the specific violation.

Finally, the SEC devotes nearly a page to arguing that it is not bound by Meyers' admission that "Murstein never directed or suggested that Meyers should conceal that he was being compensated by Medallion."  Opp. 43-44.  The SEC misses the point.  Defendants never sought to bind *the SEC* to this admission—rather, *Meyers* is bound by this admission, which further undercuts the plausibility of the SEC's aiding and abetting claim against Medallion and Murstein.

## D.    The SEC Fails To Adequately Plead Violations Relating To Reporting, Books And Records, Internal Controls, Or Misleading The Auditor (Counts 5-7)

The SEC's secondary claims all fail for the same reasons the underlying valuation and touting claims fail.  Br. 35-38.  The SEC does not argue otherwise with respect to the Section 13(a) reporting claim against Medallion, which also forecloses its aiding and abetting claim against Murstein under the same theory.  And the SEC's arguments for the other secondary claims are also unavailing.  The SEC fails to state a Section 13(b)(2)(A) claim because, as alleged, Medallion reasonably relied on valuations that complied with GAAP and ASC 820, which is underscored by the fact that the auditor and valuation firms stand by the valuations.  *See* Br. 14-22.  Moreover, the

SEC conceded that the valuations are opinion statements, and because those opinion statements are not actionable, *see supra* at 4-8, a books and records claim cannot be premised on them.  The SEC claims the "reasonableness" of defendants' action is not an issue ripe for a motion to dismiss a Section 13(b) claim, Opp. 54, but it is not a question of reasonableness of reliance, but that as a matter of law, reliance on opinion statements cannot support a books and records claim.

The Section 13(b)(2)(B) claim also fails because Medallion properly "exercise[d] [its] judgment" in devising and maintaining its internal accounting controls.  *SEC v. Rio Tinto plc*, 2019 WL 1244933, *19 (S.D.N.Y. March 18, 2019).  Indeed, "the mere fact that accounting controls may have been circumvented does not state a claim for a violation of Section 13(b)(2)(B)."  *Id.*  Similarly, the SEC's conclusory assertion that "Murstein had an active role in developing or applying the controls as to valuation," Opp. 57, is not enough to establish the "substantial assistance" necessary to plead its aiding and abetting claim against Murstein.  *See Rio Tinto*, 2019 WL 1244933, at *18 (finding the SEC failed to allege substantial assistance on similar claim).  The SEC asks the Court to "infer" from its pleading that Murstein had an "active role" in internal controls, further illustrating that such a role was not actually pleaded.  Opp. 56-57.  Finally, the SEC's claim that Murstein made material misrepresentations to Medallion's auditor assumes the validity of its other claims.  *See* Br. 38 (citing ¶¶ 265-70).  For example, the SEC alleges that Murstein signed representation letters that "the financial statements were prepared in accordance with GAAP."  Opp. 57.  But, since those statements *did* comply with GAAP, there was no material misrepresentation on which to predicate a misrepresentation to the auditor.  *See supra* at 4-12.

**E.    The Requested Disgorgement And Officer/Director Bar Relief Should Be Stricken**

If the SEC's claims are not dismissed in their entirety, the disgorgement and officer/director bar remedies should be stricken.  Br. 38-39.  In asserting otherwise, the SEC misstates Defendants' arguments.  Defendants never claimed the SEC must "put forward

evidence" to justify disgorgement, Opp. 58, but instead maintain that the SEC must plausibly *allege* "ill-gotten gains" for its disgorgement demand to survive a dismissal motion under *Liu v. SEC*, --- U.S. ---, 140 S. Ct. 1936, 1942 (2020).  The SEC has not done so.  Its reliance on a 45-year-old Second Circuit case to counter *Liu* is unavailing, and the SEC fails even under the standard in that case:  because there is not a single allegation of ill-gotten gains, "no evidence in support" of disgorgement could be admitted.  Opp. 58 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)); *see also SEC v. Berry*, 2008 WL 4065865, *10 (N.D. Cal. Aug. 27, 2008) (striking SEC's prayer for disgorgement on a motion to dismiss).  The SEC claims "the relationship between the fraud and Murstein's compensation is a factual question better resolved at a later stage," Opp. 59, but it cannot point to a single allegation in the pleading about that relationship.  Thus, "[a]ll relevant facts [are] established, and no additional facts could change the outcome."  ECF 68 at 54.  The demand for disgorgement should be stricken.

The SEC also tries to salvage its demand for an officer-and-director bar against Murstein by insisting it is a question of fact to be decided later.  Here, the SEC's demand fails as a matter of law because the facts alleged, even if assumed true, are insufficient to sustain an officer-and-director bar.  There are no allegations, for example, that Murstein is a "repeat offender," that it is "likel[y] that misconduct will recur," *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995), or that he has had anything other than "an otherwise unblemished career," *SEC v. Stanard*, 2009 WL 196023, at *33 (S.D.N.Y. Jan. 27, 2009).  In the absence of such allegations, the SEC's demand for an officer-and-director bar should be stricken.

## CONCLUSION

The SEC's Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  September 20, 2022
New York, New York

**GIBSON, DUNN & CRUTCHER LLP**

By:  */s/ Mark Schonfeld*
Mark Schonfeld
Akiva Shapiro
Seton Hartnett O'Brien
200 Park Avenue
New York, NY 10166
(212) 351-4000
mschonfeld@gibsondunn.com

*Attorneys for Medallion Financial Corp.*
*and Andrew Murstein*

KING & SPALDING LLP

Randy M. Mastro
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
RMastro@kslaw.com

*Attorneys for Medallion Financial Corp.*
*and Andrew Murstein*

DEBEVOISE & PLIMPTON, LLP

Andrew J. Ceresney
Lisa R. Zornberg
Michael W. Gramer
919 Third Avenue
New York, NY 10022
(212) 909-6000
aceresney@debevoise.com

*Attorneys for Andrew Murstein*

WALDEN MACHT & HARAN LLP

Jim Walden

250 Vesey St
27th Floor
New York, NY 10281
(212) 335-2030
jwalden@wmhlaw.com

*Attorneys for Andrew Murstein*