UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                        *Plaintiff*,

                v.

MEDALLION FINANCIAL CORP. *et al.*,

                        *Defendants*.

21 Civ. 11125 (LAK)

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT
OF DEFENDANTS LAWRENCE MEYERS
AND ICHABOD'S CRANIUM, INC.**

The third time is not the charm. In the latest version of its opposition papers, the Securities and Exchange Commission stunningly reverses course and now contends that defendants Lawrence Meyers and Ichabod's Cranium, Inc. violated the anti-touting provision of Securities Act without actually urging or suggesting the purchase of Medallion Financial Corp.'s stock — and without even mentioning Medallion's name. This argument is utterly risible and, carried to its logical extreme, would put the entire public relations industry out of business.

The gravamen of the SEC's amended complaint with respect to Meyers, as the SEC now explains in its third-chance opposition, is that defendants were engaged in a malevolent scheme to boost Medallion's stock price. Meyers' portion of this scheme was

to use public-relations tools to deride Medallion's arriviste competitors and their business model, to deprecate short-sellers, and to talk up the benefits of legacy taxi models.

Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b), prohibits "touting" a stock without disclosing the tout's compensation. The SEC agrees with Meyers that in approximately 97.7% of Meyers' 1,000 writings,[1] Meyers did not even mention Medallion. Unfazed, the SEC does not seem to want to let go of this "scheme" notion; but *failing to mention the issuer is a complete defense to a Section 17(b) claim.* The SEC argues that the "purpose" of these 977 completely lawful writings was to make Medallion's stock appear attractive and to discredit commonly held views about the risks to Medallion's business. Even assuming *arguendo* this to be the parties' purpose, it was a purpose that could be accomplished lawfully as long as Meyers did not "describe" Medallion's securities; the absence of such a "description" is fatal to the SEC's Section 17(b) claim.

In the vestigial 18 (or possibly 23) writings, where Medallion is *mentioned*, the SEC fails to explain how the "mention" constitutes a "*descri[ption]*" of Medallion's securities, within the meaning of the text of Section 17(b).

Meyers, in his brief in chief, distinguishes the facts of this matter from those of *SEC v. Liberty Capital Grp. Inc.*, 75 F. Supp. 2d 1160 (W.D. Wash. 1999) (wherein including the name of the issuer on a list of "hot picks" was a Section 17[b] predicate). The SEC cites *Liberty*, but now for the first time asserts a broad reading of *Liberty*

---

[1] The SEC asserts that 23 of Meyers' 1,000 writings "mentioned" Medallion. We think the actual number is approximately 18. This difference does not really matter to the outcome. Like Ivory Soap – "99 and 44/100% pure" – the non-compliance, if at all, is immaterial; and "descriptions," not "mentions" are what trigger Section 17(b) liability.

means that even mentioning a company favorably in *any* medium that is aimed at investors is a 17(b) predicate, even if the mention contains no reference to the investment qualities (e.g., "hot picks") of the stock. This argument lends itself to a simple *reductio ad absurdum* analysis. By this logic, mentioning that "Christian Dior makes the world's best clothes" would be permissible in *Women's Wear Daily* but not in the *Wall Street Journal*. In the SEC's revisionist view, a statement that "Producers of couture women's wear will outperform low-end clothing manufacturers" would be impermissible in any medium, under the SEC's new 17(b) standard, where merely talking up the client's *industry* is a *faux pas*.

Fortunately for the entire public relations profession — which would be doomed if the SEC's argument were accepted — the language of Section 17(b) is clear and unequivocal in the requirement that the offending statement "describe" the "security" in question. Such a "description" is an indispensable element of a 17(b) violation. If Congress had intended to proscribe some other form of communication, it has had multiple chances to do so, but does not even appear to have considered any alternative. The SEC would have this Court create a common-law offense that Congress did not itself see fit to preclude.

In light of a remedial enactment aimed at "tipster's sheets," it is impossible to reconcile the SEC's current argument with the absence of a "tip" in substantially all of Meyers' writings. *United States v. Amick*, 439 F.2d 351, 365 (7th Cir.), *cert. denied*, 404 U.S. 823 (1971).

At bottom – whether the correct number of "mentions" is 1.8% or 2.3% of the total writings of Meyers — this number is *de minimis*, about which this *lex* should not *curat*. (A putative disgorgement by Meyers of 2.3% of his total compensation of $65,000 puts this matter into entry-level small claims territory.)

The SEC likewise fails to explain *which*, if any, of the 1,000 writings of Meyers is alleged to contain an actual "description" of Medallion's securities and the words constituting the "description" – a failure under Rule 9(b), *Fed.R.Civ.P.*, as Meyers has previously argued.

Finally, the SEC continues to cling to its 10b-5 claim against Meyers, now seemingly based solely on Meyers' use of pseudonyms in some of his writings. But the SEC, noteworthily, does not assert Meyers to have assumed the name of any other living person, nor to have claimed to possess professional qualifications that he did not, in fact, possess. The SEC does not allege that any investors were misled by Meyers' pseudonymous postings. The SEC still does not allege that the pseudonymous postings were made in connection with the purchase or sale of a security.

-5-

This case needs to go away. It should never have been brought. For these and the reasons previously urged by Meyers and Ichabod's Cranium, this matter should be dismissed as against them.

Dated: New York, New York
       September 20, 2022

*s/Hilary B. Miller*
HILARY B. MILLER (HM-4041)
500 West Putnam Avenue – Suite 400
Greenwich, Connecticut 06830-6096
(203) 587-7000
hilary@miller.net

*Attorney for Defendants*
*Lawrence Meyers*
*and Ichabod's Cranium, Inc.*

/Users/hilarymiller/Documents/HBMDocs/Meyers, Lawrence/43 Meyers REPLY brief re motion to dismiss amended complaint.doc (September 20, 2022 at 18:04:00 Rev. 14)